John P. Barry
Edna D. Guerrasio
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ------------------------------------------------------------- x | | |
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORPORATION, a New Jersey corporation, | : : : : : | ECF CASE<br><br>Civ. A. No. _____ |
| Plaintiff, | : : : : | |
| - against - | : : | **COMPLAINT** |
| WILLIAM LEWERS, an individual, LUCAS KESSLER, an individual, PAUL CARON, an individual, ALLISON HOGGE, an individual, DAVID HYLAND, an individual, and KG SURGICAL & ASSOCIATES, INC., a Florida corporation. | : : : : : : : : | |
| Defendants. | : : | |
| ------------------------------------------------------------- x | | |

1. Stryker Spine, a division of Plaintiff Howmedica Osteonics Corp. ("Howmedica") which is a subsidiary of Stryker Corporation (hereinafter collectively "Stryker Spine"), brings this action against KG Surgical & Associates, Inc. ("KG"), a former distributor of Stryker Spine products, KG's two principal agents, William Lewers ("Lewers") and Lucas Kessler ("Kessler") (collectively, "KG Individual Defendants"), and KG's sales representatives, Paul Caron ("Caron"), Allison Hogge ("Hogge") and David Hyland ("Hyland") for: (i) breach of contract as a result of the unlawful termination of the distributor agreement, violation of post-contractual

obligations and failure to repay a financial assistance loan; (ii) tortious interference with contract; (iii) tortious interference with business relations; and (iv) unfair competition.

2. KG, through its principals, Lewers and Kessler, negotiated and executed a comprehensive 40 page Sales and Representative Agreement (the "Agreement") pursuant to which it became the exclusive distributor of Stryker Spine products with a specified list of doctors and healthcare facilities in northern Florida (the "North Florida Region") for an initial period of three years, from February 1, 2019 through January 31, 2022.

3. KG retained defendants Caron, Hogge and Hyland as well as Robert Triglia (collectively "KG Sales Representatives") to sell Stryker Spine products and service Stryker Spine's customers in the North Florida Region.

4. The Agreement provided a procedure pursuant to which KG could terminate the Agreement during the initial three year term --- namely, it required KG to provide notice of any material breach by Stryker Spine of the Agreement's terms and thereafter Stryker Spine had 30 days to cure any alleged material breach cited by KG. If Stryker Spine failed to remedy the alleged material breach within the 30 day window, then KG could lawfully terminate the contract.

5. On August 31, 2020, Lewers and Kessler abruptly and without notice or citing to any breach (much less a material breach) of the Agreement terminated KG's contract with Stryker Spine, effective immediately.

6. Immediately after terminating KG's contract with Stryker Spine, KG, Lewers and Kessler entered into a distributor agreement with Alphatec Spine, Inc. ("Alphatec"), a direct competitor of Stryker Spine, and began soliciting Stryker Spine's customers, surgeons and

hospitals in the North Florida Region to use Alphatec products in place of Stryker Spine products.

7. Shortly thereafter, Hogge, Hyland and Caron likewise began servicing former Stryker Spine surgeons and hospitals in the North Florida Region on behalf of Alphatec. Upon information and belief, Lewers and Kessler solicited these representatives to breach their post-contractual obligations owed to Stryker Spine.

8. When Lewers and Kessler terminated the Agreement, Triglia left Stryker Spine to become an independent seller of spinal products on behalf of various Stryker Spine competitors.

9. KG, Lewers and Kessler are not only in breach of the three year term set forth in the Agreement with Stryker Spine, but they are also in breach of their agreement not to compete, solicit customers or solicit the KG Sales Representatives for one year after the end of the three year term Agreement. KG, Lewers and Kessler have likewise failed to repay the loan assistance payments provided by Stryker Spine during the COVID-19 pandemic.

10. Due to the unlawful behavior of KG, the KG Individual Defendants and the KG Sales Representatives, Stryker Spine's relationships with surgeons and healthcare facilities in the North Florida Region have been damaged, Stryker Spine's confidential information has been compromised and Stryker Spine has lost (and will continue to lose) revenues and profits derived from spine product sales in the North Florida Region.

11. Stryker Spine has demanded that KG, Lewers and Kessler cease and desist from their unlawful behavior, but they have refused to do so.

## PARTIES

12. Howmedica Osteonics Corp. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Mahwah, New Jersey.

13. KG Surgical & Associates, Inc. is a corporation organized and existing under the laws of the State of Florida.

14. Kessler is a citizen of the state of Florida.

15. Lewers is a citizen of the state of Florida.

16. Caron is a citizen of the state of Florida.

17. Hogge is a citizen of the state of Florida.

18. Hyland is a citizen of the state of Florida.

## JURISDICTION AND VENUE

19. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states, and the matter in controversy exceeds $75,000.00 excluding interest and costs.

20. This Court has personal jurisdiction over KG, the KG Individual Defendants, Caron, Hogge and Hyland, and venue is proper in this District under 28 U.S.C. § 1391(a), because they all contractually consented to jurisdiction of the federal and state courts in New Jersey.

## EVENTS GIVING RISE TO THIS ACTION

**A.  Stryker Spine's Business**

21. Howmedica, through its division Stryker Spine, is a global leader in the development, manufacture and sale of spinal implants, instruments, and related products and services.

22. Stryker Spine invents, designs, manufactures and sells a full range of spinal-related implants and products which make surgeries and recoveries simpler, faster and more effective.

23. Stryker Spine products have broad appeal and acceptance in the marketplace and among the spinal surgery community.

24. The spinal surgery industry is highly competitive, and Alphatec is one of Stryker Spine's direct competitors for spinal implants and related products.

25. To sell its spinal implants and related products, Stryker Spine relies heavily on distributors that it contracts with, and the agents and sales representatives of those distributors, to cultivate, on Stryker Spine's behalf, relationships with surgeons and healthcare facilities.

26. In addition to cultivating and growing relationships with surgeons in a certain territory, Stryker Spine's distributors and the sales representatives who worked for them, also provide technical support and assistance to surgeons during surgeries, showcase Stryker Spine's products, and advise surgeons on Stryker Spine's highly specialized and state-of-the-art spinal implants and related products.

**B. KG's, Lewers' and Kessler's Contractual Relationship with Stryker Spine**

27. KG is a spinal product distributor created by its principal agents, Lewers and Kessler. On February 22, 2020, KG, Lewers and Kessler entered into a comprehensive 40 page three-year Sales and Services Representative Agreement ("Agreement") with Stryker Spine to be exclusive distributor of Stryker Spine products to a list of doctors and healthcare facilities in the North Florida Region.

28. On September 18, 2019, KG, Lewers and Kessler executed an amendment to the Agreement that went into effect as of October 1, 2019, and which included a revised and

expanded list of doctors and healthcare facilities within the North Florida Region for marketing and selling Stryker Spine products ("Amendment").

29. Both the Agreement and Amendment use the term "Stryker Spine" which is defined as a division of Howmedica Osteonics Corp.

30. According to the terms of the Agreement, Stryker Spine provided to KG and the KG Individual Defendants the "exclusive right to sell certain Spine Products" to the listed doctors and healthcare facilities in their territory.

31. In addition, under the terms of the Agreement, Stryker Spine committed to engaging KG and the KG Individual Defendants to "market, promote and solicit orders for [Stryker] Products" and "provide technical and other field support to medical service providers, including physicians and hospitals."

32. As principals of KG, Lewers and Kessler had responsibility for the Stryker Spine clients in their territory, which was the North Florida Region. As part of this responsibility, Lewers and Kessler negotiated dozens of contracts with Stryker Spine customers, retained KG Sales Representatives to market, sell and promote Stryker Spine products, and serviced key Stryker Spine customers.

**C. Post-Contractual Obligations Owed to Stryker Spine**

33. The Agreement between Stryker Spine on the one hand, and Lewers and Kessler, on behalf of themselves and KG on the other, contains certain reasonable post-contractual obligations owing to Stryker Spine.

34. The narrowly tailored post-contractual restrictive covenants are designed to protect Stryker Spine's goodwill, long standing customer relationships, sales representative relationships and Confidential Information, which is defined as follows:

> information disclosed to Representative, Representative Affiliates or any Workforce Member or known to Representative, Representative Affiliates or any Workforce Member as a consequence of or through the performance of Representative's or Principal's obligations, as applicable, under this Agreement (including, without limitation, information conceived, originated, discovered or developed by Representative, Principal, Representative Affiliate, or any Workforce Member), not generally known in the industry, about Stryker Spine's business, processes, apparatus, products, research, research programs, trade secrets, customers, customer lists, supplier and vendor identities, customer requirements, know how or intellectual property, marketing, pricing, financial data, forecasts, business plans, strategies or other confidential or proprietary information, and (ii) all terms, including financial terms, and conditions of this Agreement.

(Agreement, ¶11(b)(1)).

35. The Agreement explicitly prohibits the disclosure of Confidential Information:

> During the Term and after any expiration or termination of this Agreement, Representative and Principal shall not (and shall ensure that each Representative Affiliate and Workforce Member does not) at any time directly or indirectly remove, possess, utilize or disclose to any individual, corporation, partnership or other entity any confidential information or trade secrets of or relating to Stryker Spine.

(Id.)

36. The Agreement also contains several post-contractual restrictions that Lewers and Kessler agreed to abide by for one year after the Agreement's termination ("Restricted Period"). (Id. at ¶11(a)).

37. Lewers and Kessler promised that during the Restricted Period they would not, in any capacity, directly or indirectly, represent, market, distribute, solicit orders for, sell or provide services with respect to (i) any products which are competitive with any products or services of Stryker Spine (collectively, "Competitive Products"); (ii) any ancillary lines of medical devices or implant products ("Ancillary Lines"), regardless of whether or not such Ancillary Lines are Competitive Products; and (iii) other products or services.  (Id. at ¶11).

7

38. Lewers and Kessler also agreed during the Restricted Period not to directly or indirectly "divert, entice or otherwise take away" from Stryker Spine the business or patronage of any customers in the North Florida Region or any customers that were serviced by the KG Individual Defendants or any KG sales representatives within two years of the termination of the Agreement. (Id. at ¶11(a)(ii)).

39. Lewers and Kessler further agreed during the Restricted Period not to work for or render services directly to a competitor of Stryker Spine or to solicit or induce any person engaged as an employee, independent contractor or agent of KG or Stryker Spine to terminate his or her employment or business relationship with Stryker Spine.

40. Moreover, under the terms of the Agreement, which was set to last three years, Lewers and Kessler could terminate the Agreement only upon providing notice of a material breach of the Agreement by Stryker Spine which Stryker Spine failed to cure within thirty (30) days' notice of the alleged material breach.

**D. KG's Sales Representatives**

41. Lewers and Kessler, as Principals of KG, contracted with sales representatives to assist them in the marketing and sale of Stryker Spine products and services.

42. In 2019, Caron, Hyland, Hogge and Triglia contracted with KG to service Stryker Spine's customers in the North Florida Region.

43. Per the Agreement, KG, Lewers and Kessler agreed that they would obtain agreements with each retained sales representatives that would include post-employment restrictive covenants that would be the same or similar to their post-employment restrictions with Stryker Spine.

44. To that end, each KG sales representative signed an agreement through which he/she agreed that for one (1) year after the termination of their engagement as a KG sales representative, he/she would not "directly or indirectly manufacture, sell, service, offer for sale, or assist any other person or entity in manufacturing, selling, servicing or providing competitive products to customers (including, but not limited to, surgeons, and affiliated hospitals and clinics) of [ ] Stryker Spine that Representative learned of, serviced, solicited, sold to, or learned confidential information about or were within the same branch, territory or agency within which Representative worked during the two years prior to the date on which the Engagement Period ends." (Agreement, Schedule E, 1.1).

45. By executing the Agreement, each KG sales representative agreed that it is reasonable and necessary for the protection of the goodwill and continued business of Stryker Spine that he/she abide by the covenants and agreements contained in the Agreement during and following his/her employment with Stryker Spine, and that Stryker Spine would suffer irreparable injury, loss, harm and damage if he/she engaged in conduct prohibited in the Agreement.

**E. Lewers' and Kessler's Unlawful Termination of Agreement**

46. On August 31, 2020, Lewers and Kessler, on behalf of themselves and KG, terminated the Agreement with Stryker Spine. The termination was without cause, without notice and in breach of the Agreement.

47. Lewers and Kessler terminated the Agreement to begin working for Alphatec, a direct competitor of Stryker Spine.

48. Upon providing notice of their termination of the Agreement, Kessler told Stryker Spine representatives that he and Lewers "are going to follow the rules" and will "not be in any fusion cases."

49. This representation quickly turned-out to be false.

**F. Defendants' Interference With Howmedica's Business Contracts**

50. Alphatec sells products and services that compete with Stryker Spine's products and services. Therefore, Alphatec's products are Competitive Products as that term is defined in the Agreement.

51. The services that KG, Lewers, Kessler, Caron, Hogge and Hyland are performing on Alphatec's behalf violate the post-contractual non-compete obligations that they owe to Stryker Spine, and pose a significant risk that Stryker Spine's Confidential Information has been or will be used to aid in or create unfair competition favoring Alphatec.

52. Likewise, the services that Triglia is performing on behalf of various Stryker competitors violate the post-contractual non-compete obligations that he owes to Stryker Spine as a former employee of KG.

53. Specifically, Lewers and Kessler and the KG Sales Representatives are selling Competitive Products, soliciting Stryker Spine's customers and converting them to clients of Alphatec or other competitors, all in violation of their post-contractual non-competition obligations to Stryker Spine.

**G. Lewers' and Kessler's Unlawful Post-Contractual Conduct**

54. Lewers and Kessler have knowingly and willfully solicited Caron, Hogge and Hyland away from Stryker Spine and interfered with Stryker Spine's customer relationships.

10

55. Shortly after KG and the KG Individual Defendants' terminated the Agreement, Caron, Hyland and Hogge began selling Alphatec products. Triglia began selling competitive products for other Stryker Spine competitors.

56. Lewers, Kessler, Caron, Hogge and Hyland are now servicing Stryker Spine customers in spine fusion cases on behalf of Alphatec and using Alphatec products in place of Stryker Spine products.

57. In addition, one week after Lewers and Kessler terminated the Agreement, Stryker Spine's largest hospital client in the North Florida Region requested a refund in connection with a Stryker product that was regularly used over the prior twelve month period. The product pricing for this client had been previously set by Lewers and Kessler, who have now been seen working at the hospital on behalf of Alphatec.

### H. Stryker Spine Has Lost Business to Alphatec

58. Since Alphatec hired or contracted with Lewers, Kessler, Caron, Hogge and Hyland, Stryker Spine has lost significant business to Alphatec, which is a direct result of the Defendants' unlawful actions.

59. Numerous surgeons in the North Florida Region who regularly scheduled surgical procedures using Stryker Spine products in the past, have not scheduled or have significantly reduced their use of Stryker Spine products in surgical procedures since KG, the KG Individual Defendants and the KG Sales Representatives breached the Agreement and their obligations to Stryker Spine.

60. Spinal sales to Stryker Spine's largest hospital client in the North Florida Region have decreased by more than 90 percent since August 31, 2020.

61. Stryker Spine also has lost significant business as a result of the disruption to the North Florida region resulting from the sudden and simultaneous disassociation of the KG Sales Representatives, all of whom are now associated with Alphatec and/or selling competitive products.

## I. Stryker Spine Has Been Harmed By Lewers' and Kessler's Failure to Repay Certain Bonuses

62. In May 2020, in light of the negative impact COVID-19 had on the non-emergent medical device industry, Stryker Spine offered and paid to KG, including Lewers and Kessler as its principals, a loan in the amount of $60,000.00, to ease the financial burden caused by the pandemic ("Financial Support Loan").

63. In a contract signed by Lewers and Kessler, both individually and on behalf of KG, the KG Individual Defendants and KG agreed to "repay to Stryker" the "total" Financial Support Loan through either financial assistance received from the government's Small Business Administration's Paycheck Protection Program or through the Individual Defendants' commissions.

64. To date, only $5,000 of the $60,000 owed to Stryker Spine has been repaid.

## COUNT I
## BREACH OF CONTRACT – DISTRIBUTOR AGREEMENT
### Against Lewers, Kessler and KG

65. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

66. The Agreement that Lewers, Kessler and KG entered into with Stryker Spine was for three years and the only grounds upon which Lewers, Kessler and/or KG could terminate the Agreement was upon an uncured material breach.

67. The Agreement also contains valid and enforceable post-contractual obligations that KG, Lewers, Kessler and other sales representatives retained by KG owe to Stryker Spine.

68. The post-contractual activity restrictions contained in the Agreement are reasonable in both scope and duration, and are necessary to safeguard Stryker Spine's protectable interests in its confidential business information, as well as its business relationships and goodwill.

69. Stryker Spine performed all of the duties and obligations it agreed to and owed to Lewers, Kessler and KG under the Agreement.

70. Nevertheless, Lewers, Kessler and KG unlawfully terminated the Agreement prior to the completion of the three year term.

71. In addition, Lewers, Kessler and KG breached, and continue to breach, their post-contractual obligations owing to Stryker Spine under the Agreement by: providing services to a direct competitor; soliciting, inducing, or influencing, or attempting to solicit, induce or influence, persons engaged as an independent contractor or agent of Stryker Spine to terminate their business relationship with Stryker Spine; soliciting, attempting to solicit, or in any other way, attempting to influence Stryker Spine's customers to alter or terminate their business relationship with Stryker Spine; and/or misusing Stryker Spine's confidential and proprietary information.

72. As a result of these breaches of contract, Stryker Spine has been and will continued to be damaged in the form of lost or negatively impacted customer relationships, lost value of its confidential and proprietary information, and financially in the form of lost revenue and profits. Stryker Spine seeks injunctive relief, actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

## COUNT II
## BREACH OF CONTRACT – LOAN REPAYMENT
### Against Lewers, Kessler and KG

73. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

74. Lewers, Kessler and KG entered into a contract with Stryker Spine regarding the Financial Support Loan KG received in May 2020.

75. Stryker Spine performed all of the duties and obligations it agreed to and owed to Lewers, Kessler and KG in connection with the Financial Support Loan.

76. Per the terms of that agreement, Lewers, Kessler and KG owe Stryker Spine $55,000 as a result of the termination of their distributor Agreement prior to repayment of the Financial Support Loan.

77. Lewers', Kessler's and KG's failure to repay the Financial Support Loan is a breach of their obligations under the parties' agreement.

78. As a result of Lewers', Kessler's and KG's breach of contract, Stryker Spine has been damaged. Stryker Spine seeks actual, incidental, compensatory, and consequential damages, along with its reasonable attorneys' fees and interest.

## COUNT III
## BREACH OF CONTRACT
### Against Caron, Hogge and Hyland

79. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

80. The Sales Representative Agreement that Caron, Hogge and Hyland entered into when they became KG sales representatives contains valid and enforceable post-contractual obligations that they owe to Stryker Spine.

81. The post-contractual activity restrictions contained in the Sales Representative Agreements are reasonable in both scope and duration, and are necessary to safeguard Stryker Spine's protectable interests in its confidential business information, as well as its business relationships and goodwill.

82. Stryker Spine performed all of the duties and obligations it agreed to and owed to KG under the Distributor Agreement, from which the KG Sales Representative Agreements were derived.

83. Nevertheless, Caron, Hogge and Hyland unlawfully breached, and continue to breach, their post-contractual obligations owing to Stryker Spine under the Sales Representative Agreements by: providing services to Alphatec; soliciting, attempting to solicit, or in any other way, attempting to influence Stryker Spine's customers to alter or terminate their business relationship with Stryker Spine; misusing Stryker Spine's confidential and proprietary information; and/or by failing or refusing to return all of Stryker Spine's property upon their resignation.

84. As a result of these breaches of contract, Stryker Spine has been and will continued to be damaged in the form of lost or negatively impacted customer relationships, lost value of its confidential and proprietary information, and financially in the form of lost revenue and profits. Stryker Spine seeks injunctive relief, actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

### COUNT IV
### CONVERSION
### Against KG, Lewers, Kessler, Caron, Hogge and Hyland

85. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

86. KG, its Principals and Sales Representatives, including Lewers, Kessler, Hogge, Caron and Hyland, were provided with Stryker Spine products and instruments to service Stryker Spine customers, surgeons and hospitals in the North Florida Region.

87. As explicitly stated in the Agreements executed by Lewers, Kessler, Caron, Hogge and Hyland, these products and instruments were and remained at all times owned by Stryker Spine until sold or delivered, as applicable, to customers.

88. Following Lewers, Kessler, Caron, Hogge and Hyland's departure, well over $1 million dollars in Stryker Spine products and instruments have not been returned.

89. Despite repeated requests, all of the products and instruments have not been returned to Stryker Spine.

90. Upon information and belief, after the termination of their Agreements and without Stryker Spine's consent, Lewers, Kessler, Caron, Hogge and Hyland have been using Stryker Spine instruments during Alphatec spinal surgeries.

91. As a result of Lewers', Kessler's, Caron's, Hogge's and Hyland's unlawful conversion of Stryker Spine property, Stryker Spine has been damaged. Stryker Spine seeks injunctive relief, actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACT
### Against KG, Lewers and Kessler

92. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

93. As set forth above, the Representative Service Agreements executed by Caron, Triglia, Hogge and Hyland are valid and enforceable contracts which contain reasonable post-contractual obligations owing to Stryker Spine.

94. KG, Lewers and Kessler were fully aware of the Sales Representative Agreements executed by Caron, Hogge and Hyland. In fact, it was their obligation under the Agreement to ensure the Sales Representative Agreements were in place for Stryker Spine's protection and benefit.

95. Despite having knowledge of the post-contractual restrictions imposed by the Sales Representative Agreements, upon information and belief, KG, Lewers and Kessler intentionally solicited Caron, Hogge and Hyland to leave Stryker Spine for Alphatec, solicit Stryker Spine's customers, unfairly compete against Stryker Spine, and damage Stryker Spine for the benefit of Alphatec, in violation of their post-contractual obligations.

96. Despite having knowledge of the post-contractual restrictions imposed by the Sales Representative Agreements, upon information and belief, KG, Lewers and Kessler are allowing Triglia to compete with Stryker Spine.

97. As a result of KG's, Lewers' and Kessler's intentional interference, Stryker Spine has been damaged. Stryker Spine seeks injunctive relief, actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

## COUNT VI
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE: HOWMEDICA'S CUSTOMERS**
**Against All Defendants**

98. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

99. Until the events giving rise to this action, Stryker Spine had maintained valid business relationships with its customers and/or prospective customers in the North Florida Region.

100. Stryker Spine's relationships generated good will among these customers and created an expectation of future business. The knowledge Stryker Spine has gained about these customers and the business terms of these relationships are confidential and proprietary business information.

101. As former Stryker Spine distributors and representatives, Lewers and Kessler, individually and in their association with KG, as well as the KG Sales Representatives, are and remain aware of Stryker Spine's customer relationships, the unique knowledge Stryker Spine possesses about these customers and the business terms of Stryker's Spine's relationships with these customers.

102. KG, the KG Individual Defendants and the KG Sales Representatives have misappropriated and unlawfully used the information that was acquired as a Stryker distributor and/or sales representatives to divert business from Stryker to Alphatec, intentionally and unjustifiably interfering with Stryker Spine's business relationships.

103. Further, by abruptly, and without notice of cause, terminating the Agreement and then immediately soliciting surgeons and hospitals in the North Florida Region on behalf of Alphatec, Stryker Spine was denied the opportunity to preserve its relationships with these surgeons and hospitals without the interference of KG, the KG Individual Defendants and the KG Sales Representatives.

104. As a result of Defendants' tortious interference with Stryker Spine's business relationships with its customers and/or prospective customers, Stryker Spine has been damaged

and faces irreparable injury. Stryker Spine seeks injunctive relief, actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

### COUNT VII
### UNFAIR COMPETITION
### Against All Defendants

105. Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations which are contained in the preceding paragraphs.

106. Defendants undertook the foregoing acts of improper solicitation, tortious interference with Stryker Spine's contractual agreements and harm to Stryker Spine's customer relationships in the North Florida Region in order to gain an unfair competitive advantage over Stryker Spine.

107. Defendants willfully undertook the foregoing acts with knowledge of and disregard for Stryker Spine's rights, and with the intention of causing harm to Stryker Spine and benefiting themselves and Alphatec.

108. As a result of Defendants' actions, Defendants are unfairly competing in the marketplace for spinal implants, products and services.

109. As a result of Defendants' unfair competition, Stryker Spine has been injured and faces irreparable injury. Stryker Spine seeks injunctive relief, actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

### PRAYER FOR RELIEF

WHEREFORE, Stryker Spine seeks judgment in its favor and an Order against Defendants that grants the following relief:

A. Awards Stryker Spine actual, incidental, compensatory, and consequential

      damages to be proven at trial;

B.    Awards Stryker Spine its costs and expenses incurred herein, including reasonable attorneys' fees and interest;

C.    Disgorges all revenues, profits and other sums received by Defendants due to their unlawful activity and awards it to Stryker Spine;

D.    Enters a permanent injunction barring further unlawful behavior during the three year term of the Agreement and the one year post-Agreement time period; and

E.    Awards Stryker Spine such further relief as the Court deems necessary and just.

## **REQUEST FOR A JURY TRIAL**

Plaintiff, Howmedica Osteonics Corp., by counsel, hereby requests that the above-captioned matter be set for a jury trial.

Dated:  October 12, 2020                PROSKAUER ROSE LLP

                                                  By:   */s/ John P. Barry*
                                            John P. Barry
                                            jbarry@proskauer.com
                                            Edna D. Guerrasio
                                            eguerrasio@proskauer.com
                                            Proskauer Rose LLP
                                            Eleven Times Square
                                            New York, NY 10036
                                            Tel: (212) 969-3000

                                            *Attorneys for Howmedica Osteonics Corp., a subsidiary of Stryker Corp.*